UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:12-cv-182-RJC

| | |
|---|---|
| DARON ALLEN PATTERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| STATE OF NORTH CAROLINA, ) | ORDER |
| CARRIE NITZU, THOMAS W. ) | |
| THOMPSON, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1), and on Plaintiff's Motion to Proceed in Forma Pauperis, (Doc. No. 1-1). Having conducted an initial review of the Complaint as required by 28 U.S.C. § 1915, the Court will grant Plaintiff's Motion to Proceed in Forma Pauperis.

**I.  FACTS**

On November 19, 2012, pro se Plaintiff DaRon Allen Patterson, a state court inmate currently incarcerated at Albemarle Correctional Institution in Badin, North Carolina, filed the instant Complaint pursuant to 42 U.S.C. § 1983. Plaintiff has named as Defendants the State of North Carolina, Iredell County Assistant District Attorney Carrie Nitzu, and Morrisville Police Department Captain Thomas W. Thompson. Specifically, Plaintiff alleges in the Complaint:

> On October 5, 2010, Captain Thomas Thompson of the Mooresville, NC Police Department arrived at my dwelling with the intent to question me on the charge of felony stalking. Upon arriving at the dwelling that I shared with my female companion, and while being cooperative with what was asked of us, Capt. Thompson proceeded to search the property (house and vehicle) without the expressed consent of both my female counterpart or myself. In my belief, the need for evidence on the part of the police department was not as important as substantiating my inalienable

rights to life, liberty and property. The purpose actively for the search was to justify a statement provided to the police department by Frances Katsoudas of Mooresville, NC, respectively concerning firing multiple shots into her dwelling. Not only were her accusations without merit, Capt. Thompson was also unable to find a weapon to justify her claim. After illegally searching my property, I was still arrested without knowledge of the alleged charges I was being detained for. It wasn't until I had reached the police station did the magistrate provide me with knowledge of what I was actively being charged with. On October 6, 2010, the Mooresville Police Department issued a warrant for my arrest on the allegation that I possessed a firearm as a felon, evidence of which has still not been located.

(Doc. No. 1 at 3). As relief, Plaintiff states, "The plaintiff is seeking to correct the error by maintaining that his property was illegally searched and he was unable to get the full 'due process of law.' He is seeking to be compensated by the State of North Carolina and officers of Iredell County for mental and emotional damages on the basis of violating key constitutional rights appropriated to all United States citizens." (Id. at 4-5). Although Plaintiff does not articulate the specific alleged constitutional violation by Defendants, his allegations indicate that he is bringing a claim for an unlawful search in violation of the Fourth Amendment.

The Court first addresses Plaintiff's Motion to Proceed in Forma Pauperis. In support of the motion, Plaintiff has submitted his inmate trust account statement, which shows that as of November 13, 2012, Plaintiff had a balance of $0.00 in his account. See (Doc. No. 1-1 at 8). Because Plaintiff lacks sufficient funds with which to pay the filing fee, the Court will grant Plaintiff's Motion to Proceed in Forma Pauperis.

## II.    STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a

governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

### A. Defendant State of North Carolina

The Court first finds that Defendant State of North Carolina enjoys Eleventh Amendment sovereign immunity as to Plaintiff's claim for money damages.[1] See Savage v. N.C. Dep't of Corr., No. 5:06-cv-171-FL, 2007 WL 2904182, at *5 (E.D.N.C. Sept. 29, 2007) (for Eleventh Amendment purposes, the [North Carolina Department of Correction] is considered an arm of the State of North Carolina and, therefore, immune from suit for monetary damages under § 1983). Because Plaintiff seeks only money damages and not injunctive relief, the Court will dismiss the State of North Carolina as a defendant.

---

[1] As of January 1, 2012, the North Carolina Department of Correction was consolidated into the North Carolina Department of Public Safety as the Division of Adult Correction. See N.C. GEN. STAT. § 143B-701 (2011).

### B. Defendant Assistant District Attorney

Next, at all relevant times, Defendant Nitzu was an Iredell County Assistant District Attorney. In Imbler v. Pachtman, the Supreme Court held "that in initiating a prosecution and in presenting the States's case, the prosecutor is immune from a civil suit for damages under § 1983." 424 U.S. 409, 430 (1976). The Imbler Court explained that "prosecutors should be afforded absolute immunity when their 'activities were intimately associated with the judicial phase of the criminal process.'" Nivens v. Gilchrist, 444 F.3d 237, 250 (4th Cir. 2006) (quoting Imbler, 424 U.S. at 430).

Other than naming Defendant Assistant District Attorney Nitzu in the caption of the Complaint, Plaintiff does not present any factual allegations against Defendant Nitzu. This Court takes judicial notice that, according to Plaintiff's criminal records on Westlaw, on October 5, 2010, the date of the alleged illegal search, Plaintiff was charged in Iredell County of Discharge of a Weapon into a Dwelling, Injury to Personal Property, and Possession of Firearm by a Felon. Furthermore, the North Carolina Department of Public Safety web site indicates that on July 18, 2012, Plaintiff was convicted of stalking and was sentenced to two years imprisonment. Presumably, Defendant Nitzu was the prosecutor who filed the criminal charges against Plaintiff. Plaintiff does not allege in the Complaint that Defendant Nitzu was acting outside the scope of her traditional duties as a prosecutor. Indeed, Plaintiff's allegations simply fail to raise any question but that Nitzu was acting within the realm of her "traditional prosecutorial duties." Nivens, 444 F.3d at 250. In sum, Defendant Nitzu is entitled to absolute prosecutorial immunity and will be dismissed from this lawsuit.

### C. Morrisville Police Department Captain Thomas W. Thompson

Finally, as to the remaining Defendant Morrisville Police Department Captain Thomas W.

Thompson, Plaintiff alleges that Defendant Thompson "arrived at my dwelling with the intent to question me on the charge of felony stalking. Upon arriving at the dwelling that I shared with my female companion, and while being cooperative with what was asked of us, Capt. proceeded to search the property (house and vehicle) without the expressed consent of both my female counterpart or myself." (Doc. No. 1 at 3). Plaintiff further alleges that the "purpose . . . for the search was to justify a statement provided to the police department by Frances Katsoudas of Mooresville, NC, respectively concerning firing multiple shots into her dwelling." (Id. at 4). Finally, Plaintiff alleges that the accusations by Katsoudas were "without merit" and Defendant Thompson "was unable to find a weapon to justify [Katsoudas'] claim." (Id.).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. It has been construed to mean that "[a]bsent exigent circumstances, [the] threshold [of one's house] may not reasonably be crossed without a warrant." Payton v. New York, 445 U.S. 573, 590 (1980). Generally, a warrant is required to conduct a search of a person's home, but a warrantless search may be conducted when "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." Mincey v. Arizona, 437 U.S. 385, 393-94 (1978) (quoting McDonald v. United States, 335 U.S. 451, 456 (1948)).

Any warrantless search permitted by the exigent circumstances exception must be "strictly circumscribed" by the exigency that justifies the exception, and the search may not be expanded beyond what is necessary to allay the exigency without further justification. See id. at 393. Courts recognize the existence of exigent circumstances to justify a warrantless search in several situations, including: to prevent the destruction of evidence, to ensure the safety of law enforcement officers

or the general public, when police are in "hot pursuit" of a fleeing suspect, or when other emergency circumstances exist, such as the need to assist injured individuals. See United States v. Thompson, No. 2:09-cr-64, 2012 WL 2375541, at *4 (S.D. W. Va. June 22, 2012) (citing cases). The Fourth Circuit has stated that the exigent circumstances exception to the warrant requirement "basically encompasses officer safety and the destruction of easily-disposed evidence." Gould v. Davis, 165 F.3d 265, 270-71 (4th Cir. 1998).

To successfully invoke the exigent circumstances doctrine, law enforcement officers need only possess a "reasonable suspicion" that such circumstances exist at the time of the search or seizure. United States v. Grogins, 163 F.3d 795, 797 (4th Cir. 1998). "Exigent circumstances render permissible a warrantless search or seizure, even when there is no probable cause to believe that a crime has been committed." Figg v. Schroeder, 312 F.3d 625, 639 (4th Cir. 2002) (citing Michigan v. Tyler, 436 U.S. 499, 509 (1978)).

Plaintiff's Fourth Amendment claim against Defendant Thompson survives initial review. That is, Plaintiff alleges that Defendant Thompson searched Plaintiff's house without a warrant and without Plaintiff's consent, and it is premature to rule on the issue of whether exigent circumstances existed. In sum, Plaintiff has alleged enough facts to state a Fourth Amendment claim against Defendant Thompson, and this action will therefore survive initial review as to him.[2]

---

[2] Plaintiff's Fourth Amendment claim may be barred by the principles announced in Heck v. Humphrey, 512 U.S. 477, 486 (1994). In Heck, the U.S. Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." From the face of the Complaint, the Court cannot discern whether this action is Heck-barred. Therefore, the Court will allow the Complaint to survive initial review as to Heck issue as well.

## IV. CONCLUSION

Having conducted a preliminary review of the Complaint in accordance with 28 U.S.C. § 1915(e)(2), the Court finds that Defendant Nitzu enjoys prosecutorial immunity and the State of North Carolina enjoys Eleventh Amendment immunity. Plaintiff's Complaint survives initial review as to Defendant Thompson.

**IT IS, THEREFORE, ORDERED** that:

(1) Plaintiff's Motion to Proceed in Forma Pauperis, (Doc. No. 1-1), is **GRANTED** for the limited purpose of this initial review.

(2) The Court dismisses Plaintiff's claim as to Defendants State of North Carolina and Carrie Nitzu. The Complaint survives initial review as to Defendant Thompson.

(3) The Clerk is directed to mail a summons form to Plaintiff for Plaintiff to fill out and identify Defendant Thompson in the summons for service of process, and then return the summons to the Court. Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service. That is, in filling out the summons form, Plaintiff must attempt to identify Defendant Thompson's current position, place of employment, and address. If Defendant Thompson does not waive service at his home address, his current place of employment shall furnish Defendant's home address to the U.S. Marshal. The summons and executed summons that will be served on Plaintiff after service is effectuated shall be redacted so that Defendant's home address is not included. Once the Court receives the summonses from Plaintiff, the Court will then direct the U.S. Marshal to effectuate service upon Defendant.

Signed: January 16, 2013

Robert J. Conrad, Jr.
Chief United States District Judge