UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:12-cv-182-RJC

| | |
|---|---|
| DARON ALLEN PATTERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| STATE OF NORTH CAROLINA, | ) ORDER |
| CARRIE NITZU, THOMAS W. | ) |
| THOMPSON, | ) |
| | ) |
| Defendants. | ) |

THIS MATTER comes before the Court on a Motion for Summary Judgment by Defendant Thomas Thompson. (Doc. No. 20).

**I.     BACKGROUND**

A.     Procedural Background

Pro se Plaintiff pled guilty in Iredell County, North Carolina, on July 18, 2012, to felony stalking of his ex-girlfriend Frances Katsoudas, and he was sentenced to a term of 20 to 24 months of imprisonment. The North Carolina Department of Public Safety website indicates that Plaintiff was released from prison on February 27, 2014. According to this Court's docket report, Plaintiff now resides in Ohio.

On November 19, 2012, while he was still incarcerated on the felony stalking conviction, Plaintiff filed this action under 42 U.S.C. § 1983, naming as Defendants the State of North Carolina, attorney Carrie Nitzu, and Thomas W. Thompson, a Captain with the Mooresville Police Department. On January 16, 2013, this Court dismissed all Defendants except for

1

Thompson.[1]  Plaintiff purports to bring a Fourth Amendment claim for an unreasonable search against Thompson based on a search of a residence and vehicle that Defendant Thompson conducted after Plaintiff was charged with felony stalking of Katsoudas.  Plaintiff alleges that Defendant Thompson did not receive consent from either Plaintiff or the owner of the residence or vehicle before conducting the search.  According to Plaintiff, Defendant Thompson was searching for a gun that was never found.

On May 14, 2014, Defendant filed the pending summary judgment motion.  On May 16, 2014, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court.  (Doc. No. 22). Plaintiff did not file a response to the summary judgment motion, and the time to do so has passed.[2]

    B.    Factual Background

    1.    Defendant Thompson's Summary Judgment Materials

Defendant's evidence on summary judgment shows that on Thursday, September 30, 2010, Frances Katsoudas went to the Mooresville Police Department complaining that Plaintiff

---

[1] The Court dismissed the State of North Carolina as enjoying Eleventh Amendment sovereign immunity.  To the extent Plaintiff sued Defendant Thompson in his official capacity, the suit was against the State of North Carolina.  Therefore, the only claim remaining against Thompson is in his individual capacity.

[2] Plaintiff has not responded to the summary judgment motion by Defendant Thompson, despite the fact that this Court mailed notice to Plaintiff of the summary judgment motion on May 16, 2014, stating that Plaintiff had until May 30, 2014, to respond to the summary judgment motion. The docket report indicates that on September 9, 2014, Plaintiff contacted the Court to inform the Court of his address change.  The Court mailed copies of the summary judgment motion on that date, but Plaintiff has still not responded to the summary judgment motion.  Plaintiff is, therefore, deemed to have abandoned his claim against Defendant Thompson.  See FED. R. CIV. P. 56(e).  Out of an abundance of caution, the Court addresses the merits of the summary judgment motion.

was stalking her. (Doc. No. 21-1 at ¶ 7: Affidavit of Thomas W. Thompson). Katsoudas reported to officers that she and Plaintiff had been in a romantic relationship and that on September 26, 2010, September 27, 2010, September 28, 2010, and September 29, 2010, Plaintiff had engaged in various threatening and harassing behaviors at Katsoudas' home, place of employment, and church, including but not limited to threatening to shoot her. (Id.). Katsoudas stated that she was afraid because Plaintiff had assaulted her in the past and she believed he planned to hurt her and/or kill her. (Id.). Katsoudas also brought three other women with her to the police station that day. Defendant Thompson interviewed the three women and obtained written statements regarding Plaintiff's abusive treatment of Katsoudas. (Id. at ¶ 8).

Defendant Thompson researched Plaintiff's criminal history and saw that he had a prior conviction for stalking Katsoudas, as well as a lengthy criminal history. (Id. at ¶ 9). Based on the statements by Katsoudas and the three witnesses, as well as Plaintiff's prior conviction for stalking Katsoudas on July 28, 2009, Defendant Thompson sought to obtain a warrant for Plaintiff's arrest based on felony stalking. (Id. at ¶ 10). On October 5, 2010, a state magistrate concluded there was probable cause for Plaintiff's arrest for felony stalking. See (Doc. No. 21-3: Arrest Warrant, Exhibit B to Thompson Aff.). The arrest warrant stated that the magistrate found probable cause to believe that between September 26, 2010, to September 29, 2010, Plaintiff:

> [feloniously stalked] Frances Katsoudas by following her, trespassing at her residence, harassing her at her place of employment and threatening to shoot her. These actions have caused Frances Katsoudas emotional distress by placing her in reasonable fear or death or bodily injury. The defendant has been previously convicted of stalking Frances Katsoudas 07/28/2009 in Iredell County Court.

(Id. at 2).

On October 5, 2013, at around 10:45 a.m., after obtaining the arrest warrant, Defendant

3

Thompson went to a residence at 125 London Road, which was Plaintiff's last known address. Defendant was accompanied by Lieutenant David Clanton, K-9 Officer David Fortson, and a police canine. (Doc. No. 21-3: Arrest Warrant, Exhibit B to Thompson Aff.; Doc. No. 21-1 at ¶ 11). Lieutenant Clanton and Defendant Thompson went to the back door of the home and knocked. K-9 Officer Fortson and the canine remained in the yard. (Doc. No. 21-1 at ¶ 12).

At the door to the home, a white female, who identified herself as Susan Diane O. Dickson-Patterson, represented that she was the owner of the home and Plaintiff's girlfriend.[3] (Id.). Defendant Thompson asked Dickson-Patterson if he could enter the premises to search for Plaintiff. Dickson-Patterson indicated that Plaintiff was in the bedroom and she gave Defendant permission to enter the residence. (Id.). Thompson went into the bedroom, where he found Plaintiff in the bed. (Id.). Thompson informed Plaintiff that he had a warrant for his arrest based on felony stalking of Katsoudas, and also asked him if he had any weapons. (Id. at ¶ 13). Plaintiff stated that he had no weapons. According to Thompson's affidavit, Plaintiff then gave permission for Thompson and Officer Clanton to look around. (Id.). Plaintiff said that "Frances was crazy" and he stood up and allowed Thompson to handcuff him in the front. (Id.).

Defendant Thompson also asserts that when they first arrived at the home, he saw a Pontiac Grand Prix parked at the residence. Thompson's affidavit indicates that Katsoudas had reported to officers that Plaintiff had fired shots at her from that vehicle at some point. See (Id. at ¶ 11). Thompson asked Plaintiff if he owned the Pontiac Grand Prix in the yard. (Id. at ¶ 14). Plaintiff replied that Dickson-Patterson owned the vehicle. (Id.). Thompson asserts that Lieutenant Clanton received permission from Dickson-Patterson to search the vehicle. (Id.). The officers searched the vehicle, but did not find a weapon in the vehicle. (Id.).

---

[3] Dickson-Patterson is identified in the pleadings as Plaintiff's ex-wife.

4

As noted, Plaintiff subsequently pled guilty to felony stalking. There is no indication in the record that the search of the residence or vehicle uncovered any evidence used to obtain the subsequent stalking guilty plea and conviction against Plaintiff.[4] While he was incarcerated, Plaintiff continued to attempt to contact Katsoudas via mail, and to the point that the state court entered an Order of Protection prohibiting Plaintiff from contacting Katsoudas until at least September 30, 2014. See (Doc. No. 21-6; 21-7).

2. Plaintiff's Verified Complaint and Sworn Declaration

In Plaintiff's complaint, which is accompanied by a declaration that his statements are made under penalty of perjury, Plaintiff alleges that Defendant Thompson and other officers "search[ed] the property (house and vehicle) without the expressed consent of both my female counterpart [Dickson-Patterson] and myself." (Doc. No. 1 at 3). Plaintiff further alleges that the purpose of the search was "to justify a statement provided to the police department by Frances Katsoudas . . . concerning firing multiple shots into her dwelling." (Id. at 4). Furthermore, before Defendant Thompson filed the pending summary judgment motion, Plaintiff filed a sworn declaration in this Court, in which he states again, under penalty of perjury, that Defendant Thompson and the other officers did not receive consent from Plaintiff or Dickson-Patterson before searching the house and vehicle. (Doc. No. 6 at 1-2). Plaintiff states that Defendant Thompson searched Plaintiff's house and Dickson-Patterson's car without a search warrant and without consent, and Plaintiff points out that the gun that the officers were searching for was never found. Plaintiff seeks damages for mental anguish as a result of the alleged illegal search.

II. **STANDARD OF REVIEW**

---

[4] Thus, based on the record before the Court, it appears that even if Plaintiff were to prevail on his Fourth Amendment claim, his felony stalking conviction would not be invalidated.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.

Anderson, 477 U.S. at 255. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50.

### III.    DISCUSSION

Plaintiff alleges that Defendant Thompson's search of the residence and vehicle owned by Dickson-Patterson violated his rights under the Fourth Amendment to the U.S. Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, <u>but upon probable cause</u>, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV (emphasis added). Absent consent or the existence of exigent circumstances, warrantless searches are per se unreasonable. See Payton v. New York, 445 U.S. 573, 586 (1980); Coolidge v. New Hampshire, 403 U.S. 443 (1971).

Plaintiff's Fourth Amendment claim against Defendant Thompson is based on Plaintiff's contention that the search of the house and vehicle was illegal. Here, it is undisputed that there was no warrant to search, and Defendant does not claim the existence of exigent circumstances. Therefore, Plaintiff's Fourth Amendment claim succeeds or fails based on whether consent was given for the search. In his affidavit, Defendant Thompson contends that the search was constitutionally valid because it was based on both Plaintiff's and Dickson-Patterson's voluntary consent. The Fourth Amendment's prohibition on warrantless entry into a person's home does not apply when voluntary consent to enter is obtained either from the person whose property is searched, see Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973), or from someone, such as a spouse, with actual or apparent authority over the premises, United States v. Matlock, 415 U.S. 164, 171 (1974). For consent to justify a warrantless search, the consenting party must "freely

and intelligently [give his] unequivocal and specific consent to the search, uncontaminated by any duress or coercion, actual or implied." United States v. Morrow, 731 F.2d 233, 236 (4th Cir.) (citing United States v. Vickers, 387 F.2d 703, 706 (4th Cir. 1967)). "Consent may be inferred from actions as well as words." United States v. Hylton, 349 F.3d 781, 786 (4th Cir. 2003). In determining whether consent was freely and voluntarily given, the Court must consider the totality of the circumstances. See United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996).

In a section 1983 civil action, the burden of proving involuntary consent rests on the plaintiff. Amato v. City of Richmond, 875 F. Supp. 1124 (E.D. Va. 1994), aff'd, 78 F.3d 578 (4th Cir. 1996); Ruggiero v. Krzeminski, 928 F.2d 558, 563 (2d Cir. 1991) (stating that, in a Section 1983 action, the plaintiff has the burden of showing lack of consent); Crowder v. Sinyard, 884 F.2d 804, 824-26 (5th Cir. 1989) (stating that the burden of proof does not shift and plaintiff must prove that state officials conducted not only a warrantless search but a warrantless search without authorization under an exception to the warrant requirement), overruled on other grounds by Horton v. California, 496 U.S. 128 (1990).

Although Plaintiff did not respond to the summary judgment motion, Plaintiff averred in his verified complaint and in a sworn declaration in this Court that neither he nor Dickson-Patterson consented to the search of the residence or vehicle.[5] Plaintiff has failed, however, to

---

[5] As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge. Davis v. Zahradnick, 600 F.2d 458, 459-60 (4th Cir. 1979) (holding that the factual allegations contained in a verified complaint establish a prima facie case under 42 U.S.C. § 1983, so as to preclude summary judgment).

submit any statement by Dickson-Patterson regarding her consent or lack thereof. Nor does Plaintiff aver that he was even physically present when the officers asked for Dickson-Patterson's permission to perform a search. Indeed, Thompson's affidavit indicates that Plaintiff was not in the same room with Dickson-Patterson when officers asked for permission to search the vehicle. See (Doc. No. 21-1 at 3 ("Once I handcuffed Daron Patterson, I asked him if he owned the Pontiac Grand Prix in the yard. He said it was owned by the lady whose home we were in. Therefore, I asked Lieutenant Clanton to ask the lady for her permission to search her vehicle. She agreed to the search and Lieutenant Clanton gave me the keys to open the vehicle and search it.")).

Thus, Plaintiff has failed to present evidence on summary judgment, based on his personal knowledge, to raise an issue as to whether the search of Dickson-Patterson's residence and vehicle was conducted without her consent. Accord Mabry v. Williamsburg Cnty. Sheriff's Dep't, No. 0:07-3574-JFA-PJG, 2009 WL 559875, at *3 (D.S.C. Mar. 3, 2009) (granting summary judgment to the defendants where the defendants submitted affidavits showing that plaintiff's mother had consented to the search of the home she shared with the plaintiff, and where, aside from asserting that "no one" gave the defendants consent to search the home, the plaintiff did not present an affidavit from his mother buttressing his claim that his mother did not consent to the search; stating, "Notably, [Plaintiff] has not presented any statement from his mother, whose consent the defendants aver they obtained").

Finally, as the Court has already observed, Plaintiff did not even respond to the summary judgment motion. Thus, he has, in any event, effectively abandoned his claim against Defendant Thompson. In sum, for the reasons stated, the Court will grant Defendant's summary judgment motion.

9

## IV. CONCLUSION

For the reasons stated herein, the Court hereby grants Defendant's summary judgment motion.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Thompson's Motion for Summary Judgment, (Doc. No. 20), is **GRANTED** and this action is dismissed.

2. The Clerk is instructed to terminate this action.

Signed: January 13, 2015

Robert J. Conrad, Jr.
United States District Judge